IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                                                      24-CR-6072 FPG

ARCIDEZ CASTILLOS-DIGUEZ
 a/k/a Arcides Castillo-Dieguez,

        Defendant.

---

### PLEA AGREEMENT

The defendant, ARCIDEZ CASTILLOS-DIGUEZ a/k/a Arcides Castillo-Dieguez, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I.  THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to waive indictment and to plead guilty to a one-count Information which charges a violation of Title 21, United States Code, Section 841(a)(1) (possession of 400 grams or more of fentanyl with intent to distribute), for which the mandatory minimum sentence is a term of imprisonment of 10 years and the maximum possible sentence is a term of imprisonment of life, a fine of $10,000,000, a mandatory $100 special assessment, and a term of supervised release of at least 5 years and up to life. The defendant understands that the penalties set forth in this paragraph are the minimum and maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that the Court may enter an order of community restitution in an amount not to exceed any fine imposed pursuant to Title 18, United States Code, Section 3663(c) and Sentencing Guidelines § 5E1.1(d).

3. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 5 years without credit for time previously served on supervised release.

## II.   ELEMENTS AND FACTUAL BASIS

4. The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

   a.   That the defendant possessed a controlled substance;

   b.   That the defendant knew that the defendant possessed a controlled substance; and

   c.   That the defendant intended to distribute the controlled substance; and

   d.   The offense involved at least 400 grams of a mixture and substance containing fentanyl, a Schedule II controlled substance.

## FACTUAL BASIS

5. The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

   a.   On or about May 23, 2023, in the Western District of New York, the defendant, ARCIDEZ CASTILLOS-DIGUEZ a/k/a Arcides Castillo-Dieguez, did knowingly and intentionally possess, with intent to distribute, at least 400 grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance.

2

b. More specifically, during a long-term narcotics investigation, a Drug Enforcement Agency (DEA) Task Force Officer (TFO), posing as a fentanyl customer made a series of controlled buys in an undercover (UC) capacity that implicated the defendant in a narcotics conspiracy. Surveillance conducted before, during and after these UC buys, allowed agents to identify three different locations used by the defendant in furtherance of his narcotics trafficking activities. The first was 438 Avenue A, Rochester, New York, which was the residence of the defendant's girlfriend. The second location was 1549 East Main Street, Rochester, New York, which was the defendant's primary residence. The third location was 241 Durnan Street, Rochester, New York, which was revealed to be a stash location for the defendant's drug trafficking operation.

c. On May 23, 2023, the DEA executed search warrants at each of the above described locations. The defendant was arrested at 438 Avenue A, where he was encountered in one of the bedrooms. The following items of evidentiary value were seized from each location:

d. **438 Avenue A**: 124 baggies of fentanyl were recovered from the siding of this location. Lab reports confirmed the nature of the substance and determined the net weight of the fentanyl seized from 438 Avenue A to equal approximately 3.3 grams. Additionally, the defendant's BMW, which had been utilized during several of the UC buy operations between February 2023 and May 2023 was also seized. The keys to the vehicle were recovered on the floor, near the defendant's feet, when officers arrested him the morning of May 23, 2023.

e. **1549 East Main Street**: 131 baggies containing fentanyl, and 68 baggies containing a mixture of fentanyl and Para-fluorofentanyl (a fentanyl analogue) were recovered from this location. Agents also recovered numerous documents made out to, or in the name of the defendant at this location. Lab analysis for the substances recovered from this location confirmed the nature of the controlled substances and reported that the net weights equaled approximately 3.78 grams of fentanyl and 1.97 grams of fentanyl analogue.

f. **241 Durnan Street**: A large amount of controlled substances were found in the kitchen and dining room area of this location. The materials were located under the kitchen sink area, on the kitchen counter, and covering the kitchen/dining room table. Numerous prescription medications made out to the defendant were also found on the kitchen countertop. Some of the controlled substances were in brick form, though there were also over a thousand individual baggies of fentanyl packaged for street sale. In total, approximately 3,748.57 grams of fentanyl, 265.02 grams of para-fluorofentanyl, 37.3 grams of heroin, and

3

    25.2 grams of cocaine were seized from 241 Durnan Street. Agents also seized multiple digital scales bearing powdery residue throughout the residence; new an unused baggies were seized from the kitchen counter and dining room table; an electric blender, dinner plate, and other drug processing materials (many bearing a white powdery residue) were recovered in plain view from the kitchen/dining room table.

g. After being arrested the defendant was transported to the Rochester Police Department. The defendant was advised of his *Miranda* rights, which he voluntarily waived. The defendant was asked about the drugs in 241 Durnan Street, and he confirmed that all of the drugs were his and that no one but the defendant uses 241 Durnan Street.

h. The defendant admits and agrees that he possessed the controlled substances seized from each of the three locations, with the express intent of distributing those drugs to others. Finally, the defendant admits and agrees that he maintained the premises at 241 Durnan Street, for the principle and primary purpose of storing, packaging, manufacturing and distributing controlled substances.

i. At least 3,755.65 grams of fentanyl, 266.99 grams of a fentanyl analogue (para-fluorofentanyl), 25.2 grams of cocaine and 37.3 grams of heroin, are the amounts involved in the defendant's relevant conduct encompassed in the Information, which could be readily proven by the government against the defendant. The parties agree that, based on the Drug Conversion Tables of the Sentencing Guidelines, these amounts of fentanyl, fentanyl analogue, cocaine, and heroin are the equivalent of at least 10,000 kilograms but less than 30,000 kilograms of Converted Drug Weight.

### III.  SENTENCING GUIDELINES

6. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

7. The government and the defendant agree that Guidelines §§ 2D1.1(a)(5) and 2D1.1(c)(3) apply to the offense of conviction and provide for a base offense level of 34.

4

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

8.  The government and the defendant agree that the following specific offense characteristic does apply:

   a.  the two-level increase pursuant to Guidelines § 2D1.1(b)(12) (maintaining premises to manufacture or distribute a controlled substance).

## ADJUSTED OFFENSE LEVEL

9.  Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is 36.

## ACCEPTANCE OF RESPONSIBILITY

10.  At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level decrease of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level decrease of Guidelines § 3E1.1(b), which would result in a total offense level of 33.

## CRIMINAL HISTORY CATEGORY

11.  It is the understanding of the government and the defendant that the defendant's criminal history category is IV. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

5

## GUIDELINES' APPLICATION, CALCULATIONS, AND IMPACT

12. It is the understanding of the government and the defendant that, with a total offense level of 33 and criminal history category of IV, and taking into account the applicable statutory minimum penalties, the defendant's sentencing range would be **a term of imprisonment of 188 to 235 months, a fine of $35,000 to $10,000,000, and a period of supervised release of 5 years**. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

13. The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The defendant, however, reserves the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

14. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

15. In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

## IV.   STATUTE OF LIMITATIONS

16.   In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.   ALIEN STATUS

17.   The defendant understands that, as a result of the defendant's guilty plea and conviction, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

18.   The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status as the defendant is not a citizen of the United States. Under federal law, the crime to which the defendant is pleading guilty is a removable offense. The defendant understands that, as a result of the offense to which the defendant is pleading guilty, removal is presumptively mandatory. Removal and other immigration consequences will be the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of a conviction in this case on the defendant's immigration status. The defendant nevertheless wants to plead guilty regardless of the immigration consequences of a

conviction on the defendant's immigration status, even if the consequence is the defendant's automatic removal from the United States.

## VI. GOVERNMENT RIGHTS AND OBLIGATIONS

19. The defendant understands that the government has reserved the right to:

    a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

    b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

    c. advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and/or a fine and the method of payment;

    d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

    e. oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

20. At sentencing, the government will move to dismiss the Criminal Complaint pending against the defendant under Magistrate's No. 23-MJ-4098.

21. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII. APPEAL RIGHTS

22. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than **a sentence of imprisonment of 188 to 235 months, a fine of $35,000 to $10,000,000 and a period of supervised release of 5 years,** notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

23. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

24. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than **a sentence of imprisonment of 188 to 235 months, a fine of $35,000 to $10,000,000 and a period of supervised release of 5 years,** notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VIII. TOTAL AGREEMENT AND AFFIRMATIONS

25. This plea agreement represents the total agreement between the defendant, **ARCIDEZ CASTILLOS-DIGUEZ a/k/a Arcides Castillo-Dieguez,** and the government.

There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

TRINI E. ROSS  
United States Attorney  
Western District of New York

BY: _____  
MATTHEW T. McGRATH  
Assistant United States Attorney

Dated: May 29, 2024

I, **ARCIDEZ CASTILLOS-DIGUEZ a/k/a Arcides Castillo-Dieguez**, have been read this entire agreement, which consists of pages 1 through 10, in Spanish, by an interpreter. I have had a full opportunity to discuss this agreement with my attorney, Kathryn S. Austin, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____  
ARCIDEZ CASTILLOS-DIGUEZ  
a/k/a Arcides Castillo-Dieguez  
Defendant

_____  
KATHRYN S. AUSTIN, ESQ.  
Attorney for Defendant

Dated: May 29, 2024

Dated: May 29, 2024

I, _Carlos Aguirre_, hereby affirm under penalty of perjury that I am a Spanish Interpreter and that I have carefully and fully translated the entire plea agreement (set forth above) to the defendant, ARCIDEZ CASTILLOS-DIGUEZ a/k/a ARCIDES CASTILLO-DIEGUEZ; further that the defendant has indicated to me that the defendant understands the terms of this plea agreement and that by signing this agreement, the defendant agrees to all of its terms and conditions; the defendant has further specifically acknowledged to me that the defendant is signing the agreement voluntarily and after full consultation with the defendant's attorney, Kathryn S. Austin, Esq.

DATED: May 29, 2024.

_____
Interpreter